AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original



CLERK'S OFFICE
A TRUE COPY
Nov 04, 2024
s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **24-M-508 (SCD)** |
| Information about the location of the cellular telephone assigned call number (414)803-2585 (the "Target Cell Phone"), as further described in Attachment A | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:        Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before        11-18-24        *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to        Hon. Stephen C. Dries        .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:        11-4-24. 11:10 am                    *Stephen C. Dries*
                                                                            *Judge's signature*

City and state:    Milwaukee, WI                    Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

***Property to Be Searched***

1. Records and information associated with the cellular device assigned call **(414)803-2585** (referred to herein and in Attachment B as the "**Target Cell Phone**"), that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. The listed subscriber and subscriber address is unknown at this time, but the **Target Cell Phone** is used by Josue F. Rodriguez.

2. The **Target Cell Phone**.

***Particular Things to be Seized***

**I.     Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

  a. Information associated with each communication to and from the Target Cell Phone for a period of up to 30 days from the date of this warrant, including:

     i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

     ii. Source and destination telephone numbers;

     iii. Date, time, and duration of communication; and

     iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

  The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

  b. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

     i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary

1

to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841, 843(b), and 846, involving Josue F. Rodriguez and other unidentified subjects.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

2

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Nov 04, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) |
| Information about the location of the cellular telephone assigned call number (414)803-2585 (the "Target Cell Phone"), as further described in Attachment A | ) ) ) ) |

Case No. **24-M-508 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846, & 843 (b) | Possession with the intent to distribute controlled substances; Conspiracy to possess with the intent to distribute controlled substances; and Unlawful use of a communication facility. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Ploch, FBI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 11-4-24

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian Ploch, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (414)803-2585, (the "**Target Cell Phone**"), whose service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. The listed subscriber is unknown.

2.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this affidavit includes references to a court-authorized "pen-trap device" for said **Target Cell Phone.**

3.      I have been employed with the Cudahy Police Department as a full time sworn police officer since June 2015.  I am currently assigned as a task force officer to the Milwaukee Area Safe Streets Task Force (MASSTF) and the Federal Bureau of Investigation (FBI) Milwaukee Field Office.  In June 2020, I was officially sworn in as a federal task force officer to work with the FBI's gang task force, which provides me with the authorization to present sworn affidavits in support of federal search warrant applications.  I have received training and have experience in the area of controlled substances investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their

illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substances laws to include other violations associated with the trafficking of controlled substance. I have participated in numerous drug investigations utilizing various means of investigation including but not limited to, wire investigations, the execution of search warrants, the use of subpoenas, and the use of informants.

4. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of violations of 21 U.S.C. §§ 841, 843(b), and 846, (the "Subject Offenses") have been committed, are being committed, and/or will be committed by Josue F. Rodriguez, and other persons, known and unknown. There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**<u>PROBABLE CAUSE</u>**

7. In October 2024, Officer Jeremiah Szydel with the Cudahy Police Department spoke to a Source of Information (hereinafter referred to as SOI) who provided him with information regarding a methamphetamine distributer operating in the Milwaukee area. The SOI did not know the name of this distributor but stated that SOI has received multi-pound quantities

of methamphetamine from the distributor over the last two months. SOI described this distributor as a Hispanic male, over 6 feet tall, with tattoos on his face and neck including a tear drop tattoo under his eye. SOI indicated that the SOI knows that the distributor operates on the southside and southern suburbs of Milwaukee. SOI believes that this distributor works on behalf of the distributor's cousin. The SOI reported that the SOI acquired methamphetamine from the distributor within the last two weeks.

8.      SOI provided this information in hopes of receiving consideration in an open felony criminal matter. Further, SOI provided information against his or her penal interests by admitting to purchasing/selling large sums of methamphetamine. Much of the information provided by the SOI was later corroborated as documented in later portions of this affidavit. The SOI has prior convictions for 2nd Degree Recklessly Endangering Safety, Carrying a Concealed Weapon, Possession of THC (2nd and sub), Resisting or Obstructing Police, Bail Jumping, and Possession with Intent to Deliver Controlled Substance.

9.      On October 28, 2024, Officer Szydel, FBI TFO Andrew Langer, and your affiant met with SOI to further discuss SOI's cooperation involving the SOI's methamphetamine distributor. During this meeting, SOI placed numerous Facetime calls to the SOI's methamphetamine distributor (hereinafter "the distributor") in my presence. In those calls, I could hear the conversation clearly between SOI and the distributor. The SOI contacted the distributor via Facetime at phone number (414) 803-2585. I later reviewed the SOI's phone and confirmed that the number that the SOI contacted via Facetime for the following calls was, in fact, (414)803-2585 (**Target Cell Phone**). The following is an accurate summary of these communications, but only quoted portions are verbatim.  In context, based on my training and experience, I believe that the SOI and the distributor were discussing a prior crystal methamphetamine transaction between the SOI and the distributor and later, were arranging for the distributor to provide the

3

SOI with a free sample of crystal methamphetamine to test for quality because the quality of the previously supplied methamphetamine was poor. Specifically:

    a. In one call, the SOI and the distributor discussed a prior methamphetamine transaction. The SOI indicated that the methamphetamine was not right, and that the SOI wanted a sample of the new methamphetamine prior to purchasing anymore. The distributor indicated, in context, that it was the first time the product was not right and stated, "Listen my nigga buys 20 pounds at a time of it, this is petty shit dog, you heard me." The distributor later agreed to provide the SOI with a sample of methamphetamine. At one point, the supplier mentioned that he did not have any methamphetamine on him and that he would have to call his cousin. Based on this information, I believe that this distributor is working with at least one other person (his unidentified cousin) to distribute methamphetamine and that they typically order 20 pounds of methamphetamine at a time.

    b. Shortly after the aforementioned conversation, the SOI again contacted the distributor via Facetime at phone number (414)803-2585 (**Target Cell Phone**). During this conversation, the SOI agreed to meet with the distributor in order to obtain the previously discussed free sample of methamphetamine. As they continued to talk, the SOI directed the distributor to a meet location. The distributor indicated that he was at the location in a white truck. At that time, I personally observed a white Ford pickup truck bearing WI Dealer plate MV4573 arrive in the area where the SOI had directed the distributor to meet. I observed that the driver of the white truck was a Hispanic male with a visible tattoo spanning around his neck and collarbone. This male was on the phone, consistent with being on the phone with the SOI as the Facetime call between the SOI and the user of the **Target Cell Phone** was still ongoing.

10. The SOI then changed the meeting location to several blocks away and advised the distributor via Facetime. We drove to the new location and the SOI exited our vehicle. The

4

same white Ford truck arrived at the new location. This confirmed to me that the occupant(s) of the white truck included the user of the **Target Cell Phone**. I observed that the same male was still driving the truck. I could see two occupants within the white truck—the driver, and a male front seat passenger. I watched as the SOI walked up to the passenger side of the truck and spoke to the occupants. I observed the SOI appear to retrieve something through the passenger window. The item was small (consistent in size with a sample baggie of methamphetamine), but I could not specifically see what it was. The truck then drove away, and the SOI walked back to our vehicle. The SOI was not out of my sight from the time that the SOI left our vehicle until the SOI returned. When the SOI entered our vehicle, the SOI handed a small plastic bag over to me. The bag contained a crystal-like substance consistent with methamphetamine. The SOI stated that the SOI obtained the suspected methamphetamine from the driver of the white Ford pick-up truck, who the SOI knows to be the SOI's methamphetamine supplier and the user of the **Target Cell Phone**. I was able to view screenshots taken during the SOI's Facetime communications with the methamphetamine distributor as detailed in paragraph 9 and confirm that the user of the **Target Cell Phone** was also the driver of the white truck.

11. It should be noted that this buy was not done in a controlled manner. That is, the SOI was not searched before or after the buy because it was not planned in advance that the distributor would immediately meet with the SOI to supply a sample of his product. The SOI appeared to be potentially intoxicated when initially entering our vehicle and began contacting the distributor without being directed to do so, but while in my presence. I was able to record the audio of the SOI's Facetime calls with the distributor, had the SOI take periodic screenshots of the Facetime calls that captured the distributor's face, and I watched as the SOI exited our vehicle, met with the driver of the white truck, and returned to our vehicle. The SOI was not wearing a recording device when meeting with the driver of the white truck and I cannot independently

5

verify what occurred between the SOI and the occupants of the white truck. However, based upon my own review of the content of the Facetime calls, I believe that the user of the **Target Cell Phone** was using that phone to discuss his involvement in trafficking methamphetamine. Further, while I could not see the specific item that the driver of the white truck handed to the SOI, or what the SOI temporarily did with that item enroute to my vehicle, I believe that the item was a sample of crystal methamphetamine based on the context of the Facetime calls and my observations.

12.     I later transported the suspected methamphetamine sample provided to me by the SOI back to the Cudahy Police Department. I field tested the suspected methamphetamine and received a positive reaction for the probable presence of methamphetamine. I then weighed the suspected methamphetamine and found it to weigh 4.7 grams with the packaging. The methamphetamine sample was entered into property at the Cudahy Police Department.

13.     During the Facetime conversations between the SOI and supplier, the SOI was able to take several screenshots capturing the face and visible tattoo of the distributor. The screenshot was run through a facial recognition program which generated a viable lead. Based on my observations of the distributor and his tattoos, the SOI's description of the distributor and tattoos, the known Facetime photograph of the distributor and the facial recognition results, I was able to identify the distributor as Josue F. Rodriguez. A criminal history check on Josue F. Rodriguez revealed that he has prior arrests for Battery, Disorderly Conduct, Bail Jumping, Intimidate Witness, Fleeing/ Eluding Police, Possession with Intent to Deliver Cocaine, Possession of a Firearm by a Convicted Felon, and Resisting or Obstructing Police. Josue F. Rodriguez currently has felony and misdemeanor arrest warrants in Milwaukee County. Electronically maintained Wisconsin Circuit Court records (CCAP) reflect that: in Milwaukee County case 24CF3212, Josue F. Rodriguez was charged on July 8, 2024 with fleeing, possession

6

with intent to deliver cocaine (1-5 grams), felony bail jumping, and resisting/obstructing an officer. On July 8, 2024, an arrest warrant was issued for Josue F. Rodriguez, which remains in place. Additionally, in Milwaukee County case 23CF100, Josue F. Rodriguez was charged on January 8, 2023 with disorderly conduct (domestic abuse related), resisting/obstructing an officer, and Felon in Possession of a Firearm. On July 8, 2024, Josue F. Rodriguez failed to appear for his jury trial and a bench warrant was issued for his arrest. Said bench warrant remains in place at this time.

14.     I believe there is probable cause that Josue F. Rodriguez is the user of the **Target Cell Phone** and that he is using that phone to conduct drug transactions. First, in real-time, I listened to the calls between the SOI and the user of the **Target Cell Phone** and it was clear to me that they were discussing past and future methamphetamine transactions. Second, I viewed screenshots captured by the SOI, in my presence, of the person to whom the SOI was speaking in the Facetime calls with the **Target Cell Phone** and independently identified that subject as Josue F. Rodriguez. I confirmed by reviewing the SOI's phone that the number being used by Josue F. Rodriguez during these Facetime calls was the **Target Cell Phone**. Based on the content of these calls, I believed that the user of the **Target Cell Phone** would be contacting his cousin and then meeting up with the SOI to provide a sample of crystal methamphetamine. Shortly after, the person to whom the SOI was speaking in the Facetime calls (Josue F. Rodriguez) arrived at the first meeting location. When the SOI changed the meeting location, that same vehicle arrived at the second location. I identified the driver as Josue F. Rodriguez. The SOI then met with Josue F. Rodriguez and his vehicle passenger, returned to my vehicle in possession of crystal methamphetamine, which was consistent with the Facetime calls with the user of the **Target Cell Phone**. As such, despite this not being a controlled buy, and despite the SOI not having previously provided credible information and initiating this transaction in my presence, but not at

my direction, I believe that Josue F. Rodriguez is involved in methamphetamine trafficking with his cousin and is using the **Target Cell Phone** for that purpose. Finally, I confirmed that Josue F. Rodriguez was the person using the **Target Cell Phone** to communicate with the SOI on October 28, 2024 and I believe that tracking the location of that device will reveal locations frequented by Josue F. Rodriguez and assist in apprehending him on his arrest warrants. I also believe that location data obtained from his phone will assist law enforcement in identifying frequented locations utilized by Josue F Rodriguez and his co-conspirator(s) to store methamphetamine and proceeds of narcotics transactions.

15.     I used a law enforcement database that I have found to be accurate and reliable and determined that phone number (414) 803-2585 (**Target Cell Phone**) utilized by Josue F. Rodriguez is serviced by T-Mobile headquartered out of 4 Sylvan Way, Parsippany, New Jersey, 07054. The listed subscriber for this phone number is unknown at this time.

**Cell-Site Data**

16.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

17.     Based on my training and experience, I know that the Service Provider also can collect per-call measurement data, which the Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

### E-911 Phase II / GPS Location Data

18.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### Subscriber Information

19.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

22.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The

10

government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

23.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## <u>ATTACHMENT A</u>

### *Property to Be Searched*

1. Records and information associated with the cellular device assigned call **(414)803-2585** (referred to herein and in Attachment B as the "**Target Cell Phone**"), that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. The listed subscriber and subscriber address is unknown at this time, but the **Target Cell Phone** is used by Josue F. Rodriguez.

2. The **Target Cell Phone**.

# ATTACHMENT B

## *Particular Things to be Seized*

## I.     Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a. Information associated with each communication to and from the Target Cell Phone for a period of up to 30 days from the date of this warrant, including:

      i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

      ii. Source and destination telephone numbers;

      iii. Date, time, and duration of communication; and

      iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

   The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

   b. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

      i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to

1

accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841, 843(b), and 846, involving Josue F. Rodriguez and other unidentified subjects.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

2